UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-21917-CIV-ALTONAGA/Goodman

**VIOLET BREAUX**,

    Plaintiff,

vs.

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.

_____/

## **ORDER**

On May 6, 2020, Plaintiff, Violet Breaux, filed a Complaint [ECF No. 1] seeking review of Defendant's decision denying her disability benefits under Title XVI of the Social Security Act. The matter was referred to Magistrate Judge Jonathan Goodman for a report and recommendation on dispositive matters. (*See* Clerk's Notice [ECF No. 2]). Thereafter, Plaintiff filed a Motion for Summary Judgment ("Plaintiff's Motion") [ECF No. 23], and Defendant, the Commissioner of the Social Security Administration, filed a Motion for Summary Judgment ("Defendant's Motion") [ECF No. 26]. On July 22, 2021, the Magistrate Judge entered his Report and Recommendation ("Report") [ECF No. 29], recommending the Court grant Defendant's Motion, deny Plaintiff's Motion, and enter final judgment in favor of Defendant. On August 5, 2021, Plaintiff timely filed her Objections [ECF No. 30] to the Report, to which Defendant filed a Response [ECF No. 31]. For the following reasons, the Report is affirmed and adopted.

When a magistrate judge's "disposition" has been properly objected to, district courts must review the disposition *de novo*. Fed. R. Civ. P. 72(b)(3). Given Plaintiff's Objections, the

Case No. 20-21917-CIV-ALTONAGA/Goodman

Court has reviewed the Report *de novo*.

In his analysis, the Magistrate Judge considers the two claims raised by Plaintiff in her effort to reverse the decision of the Administrative Law Judge ("ALJ"): (1) whether the vocational expert's ("VE['s]") testimony constitutes "substantial evidence" upon which the ALJ could properly rely; and (2) whether the ALJ's assessment of Plaintiff's residual functional capacity was supported by substantial evidence. (Report 6 (quotation marks omitted)). The Report concludes neither of Plaintiff's arguments is persuasive. (*See id.*).

Plaintiff objects only to the Magistrate Judge's first finding — "that the VE's testimony constitutes substantial evidence supporting the ALJ's decision[.]" (Obj. 1 (alteration added; quotation marks omitted; quoting Report 10)). The Magistrate Judge found "that the ALJ properly relied on the VE's professional testimony when finding a significant number of jobs existed in the national economy that [Plaintiff] could perform[.]" (Report 10 (alterations added)). According to the Magistrate Judge, this reliance was proper because:

> The VE (an expert with two degrees in rehabilitation counseling, including a master's degree, and decades of work in the field of vocational rehabilitation as a counselor and vocational specialist) provided specific job numbers for each occupation by its [Dictionary of Occupational Title] ("DOT") code. The VE based her testimony regarding the job numbers she identified on the DOT, the Bureau of Labor Statistics and its Occupational Employment Statistics ("OES") program, as well as SkillTRAN/Job Browser Pro software. The VE did not provide job numbers for an entire category of occupations that included the relevant occupations/DOT codes, instead of job numbers for each occupation.

(*Id.* 9–10 (alterations added; citations omitted)).

Plaintiff argues the Magistrate Judge neglected to properly acknowledge that the VE admitted to using SkillTRAN/Job Browser Pro as her only source and insists reliance on this program is improper. (*See* Obj. 1–2). After a review of the Administrative Record [ECF No. 18] and relevant case law, the Court is unpersuaded.

Case No. 20-21917-CIV-ALTONAGA/Goodman

At Plaintiff's supplemental hearing before the ALJ, Plaintiff's counsel questioned the VE about the job numbers she presented:

> Q: . . . . On what source or sources did you rely in providing the jobs numbers that you have today?
>
> A: [B]asically the government resources which are the Bureau of Labor Statistics, Bureau of Census, Occupational Employment Survey, look at the different DOTs, SkillTRAN examines each of the occupations and correlates it to the NIC industry and comes up with a number, the job numbers.
>
> Q: So you're relying on SkillTRAN to provide the jobs numbers you've provided today?
>
> A: I use a program, Job Browser Pro.

(*Id.* 75 (alterations added)).[1] When asked if she independently verified Job Browser Pro's methodology for calculating the jobs numbers, the VE replied "[n]o, [] I rely on the program, I have looked at it, I agree with you it is complicated and it is a source that, you know, utilizes the Bureau of Labor Statistics and reliable sources that the government relies on." (*Id.* 79 (alteration added)).

"The reliance by vocational experts on computer software such as Job Browser Pro has resulted in a number of decisions in various district courts." *Middleton v. Comm'r of Social Security*, No. 6:17-cv-85, 2018 WL 1371246, at *7 (M.D. Fla. Feb. 27, 2018). In some of these cases, courts have affirmed administrative decisions where a VE relied on Job Browser Pro. *See id.* (collecting cases). In other decisions, courts have found that "exclusive reliance on the raw number of jobs produced by a software program, including Job Browser Pro software, is insufficient to provide substantial evidence at step five of the sequential evaluation unless the VE also provides evidence of the number of jobs available in the national economy based on her own

---

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

3

knowledge and experience." *Id.* (quotation marks and citations omitted; collecting cases). Plaintiff essentially asks the Court to follow the latter line of cases. A more recent Eleventh Circuit decision, however, warrants another conclusion.

In *Goode v. Commissioner of Social Security*, 966 F.3d 1277 (11th Cir. 2020), the Eleventh Circuit held that a VE "must use some method for associating SOC-based[2] employment numbers to DOT-based job types." *Id.* at 1283 (quotation marks and citation omitted). The Eleventh Circuit specifically identified two acceptable methods available to a VE, to be used in conjunction with her knowledge and expertise. *See id.* at 1284. One of the methods — "the occupational density method" — "approximates job numbers using a software program known as Job Browser Pro from SkillTRAN, which interprets available data." *Id.*

Guided by *Goode*, the Court finds the VE's testimony constitutes substantial evidence supporting the ALJ's decision. Contrary to Plaintiff's position, the Eleventh Circuit has endorsed Job Browser Pro as a tool for interpreting and presenting jobs data. *See id.*; *see also Wickline v. Saul*, No. 20-14056-Civ, 2021 WL 862319, at *9 (S.D. Fla. Feb. 16, 2021) ("The undersigned reads *Goode* as suggesting that the Job Browser Pro software is an acceptable method of fulfilling the latter requirement."). The VE's reliance on this program, in and of itself, does not diminish the weight to be given to her testimony. *See Eminisor v. Comm'r of Social Security*, No. 3:19-cv-974, 2020 WL 5810237, at *6 (M.D. Fla. Sept. 30, 2020) ("The vocational expert's use of Job Browser Pro does not diminish the reliability of his testimony. Even if he did not know exactly how Job Browser Pro determines the percentages, Job Browser Pro is used by most vocational consultants he knows, indicating its reliability as a way to determine job numbers.").

---

[2] Standard Occupational Classification ("SOC").

Further review of the Administrative Record confirms the ALJ properly relied on the VE's testimony. In determining the substantiality of the VE's testimony, the Court must "defer[] to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (alteration added). The threshold for the substantial-evidence standard "is not high" — as the Supreme Court has explained, it is "more than a mere scintilla." *Id.* at 1154 (quotation marks and citations omitted). The Supreme Court has also held that a VE's testimony may constitute substantial evidence even in the absence of specific data. *See id.* at 1156–57.

The VE in this case earned both a bachelor's and a master's degree in rehabilitation counseling; she has decades of experience in the field of vocational rehabilitation as a counselor and vocational specialist; and she is an expert on issues such as the number of jobs that exist in the national economy. (*See* Admin. R. 279–84). Considering her credentials and experience, the VE was well qualified to testify about the number of jobs available in the national economy for the relevant positions in this case. At the administrative hearing, the VE used her knowledge and experience to answer several hypothetical questions posed by the ALJ. (*See id.* 71–73). In addition, she used the Jobs Browser Pro program to determine jobs numbers — which she was entitled to do — and explained the resources that program pulls data from. (*See id.* 75, 79). Taken together, the Court finds the VE's testimony provided "more than a mere scintilla" of evidence for the ALJ to rely on in determining a significant number of jobs exist in the national economy that Plaintiff can perform.

In short, the undersigned fully agrees with the analysis and recommendations in the Report. Accordingly, it is

**ORDERED AND ADJUDGED** that the Report and Recommendation **[ECF No. 29]** is **AFFIRMED AND ADOPTED** as follows:

Case No. 20-21917-CIV-ALTONAGA/Goodman

1. Plaintiff's Motion for Summary Judgment **[ECF No. 23]** is **DENIED**.

2. Defendant's Motion for Summary Judgment **[ECF No. 26]** is **GRANTED**.

3. Final judgment shall issue separately.

**DONE AND ORDERED** in Miami, Florida, this 23rd day of August, 2021.

_____
**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc: Magistrate Judge Jonathan Goodman
counsel of record